## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**ALAN J COUTURE**,

      Debtors.

Case No. **12-61434-7**

**CRYSTAL MOORE,**

       Plaintiff.

-vs-

**ALAN J COUTURE,**

      Defendant.

Adv. No. **13-00019-BPH**

## MEMORANDUM OF DECISION

### INTRODUCTION

Plaintiff Crystal Moore ("Moore") commenced this Adversary Proceeding in 2013 seeking to except from Debtor's discharge under §§ 523(a)(2), (a)(5), (a)(6) and (a)(15) any unpaid debt owed by Debtor/Defendant Alan J. Couture ("Debtor") to Moore arising from the parties' Decree of Dissolution of Marriage ("Decree").[1]  On January 27, 2014, this Court entered

---

[1] ECF No. 1.  References to "ECF No." refer to the docket in this adversary case.  Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

a Memorandum of Decision, Order and Judgment against Debtor and in favor of Moore (collectively the Memorandum of Decision, Order and Judgment are referred to as the "Discharge Decision").[2]  The Discharge Decision excepted any unpaid Decree debt owed to Moore from Debtor's discharge under §§ 523(a)(5) and/or § 523(a)(15).[3]

Debtor filed a Motion for Relief Pursuant to Rule 9024 and Civil Rule 60 ("Motion") on October 26, 2017.[4]  The Motion requested relief from the Discharge Decision, and that the Discharge Decision be vacated.[5]  The Motion sought relief under subsections 4-6 of Civil Rule 60(b), and argues that this Court's Discharge Decision is void because the subject debt was discharged in an earlier bankruptcy commenced in  2004.[6] On its own motion the Court set the matter for hearing.[7]

After a series of continuances were granted, a hearing on Debtor's Motion was held April 10, 2018.[8]  Debtor and Moore each testified. No exhibits were offered into evidence.[9]  Following the hearing, the Court advised the parties that it would hold Debtor's Motion in abeyance so the parties could return to the Hancock County Circuit Court of the State of Indiana ("State Trial Court") to obtain a calculation of the amounts Debtor paid Moore under the Decree, allocation of those amounts to the different obligations under the Decree, and clarification whether a component of the Decree labeled "Marital Tort Judgment" was intended to be in the nature of

---

[2] ECF Nos. 24 and 25.
[3] *Id.*
[4] ECF No. 36.
[5] *Id.*
[6] *Id.*
[7] ECF No. 37.
[8] ECF Nos. 62 and 63.
[9] *Id.*

alimony or support for Moore.[10]   The State Trial Court entered its calculation and allocation on July 13, 2020.[11]   This matter is ripe for decision. The following constitute the Court's findings of fact and conclusions of law to the extent required by Rules 7052 and 9014.

FACTS

**A.  Decree of Dissolution.**

Debtor and Moore's marriage was dissolved pursuant to the Decree on September 23, 2002.[12]   The Decree imposed on Debtor numerous monetary obligations, including: child support; mortgage payments on the marital residence awarded to Moore; alimony; and a judgment for a "marital tort."[13]   The terms associated with these 4 components of the Decree included:

- Debtor was obligated to make bi-monthly mortgage payments of $897.92 ($1,795.84 monthly) on the residence (¶8 Decree);

- Bi-monthly payments of $738.64 ($1,477.28 monthly) designated as alimony "for so long as there remains an outstanding balance on the [Marital Tort] judgment referenced below" (¶9 Decree);[14]

- a Marital Tort Judgment ("Judgment") in the amount of $675,000 (¶10 Decree); and,

- Bi-monthly payments of $634.83 ($1,269.66 monthly) designated as child support (¶13 Decree).[15]

The obligation to pay alimony was to remain in effect, "so long as there remains a balance on the

---

[10] ECF no. 64

[11] The proceedings in Indiana also included an appeal to the Indiana Court of Appeals ("State Appellate Court").

[12] ECF No. 36-1.

[13] *Id*.

[14] The body of the Decree states $738.64 bi-monthly, while the order states $897.92 bi-monthly. If the amount in the order is controlling, the total monthly payment would be $1,795.84.

[15] ECF No. 36-1.

Judgment."[16]  Payments for alimony do not terminate if Moore remarries or dies.[17]

According to the Decree, Debtor shall make bi-monthly payments towards the Judgment in the amount $2,271.39 ($4,542.78 monthly).[18]  The bi-monthly Judgment payments under the Decree correspond to the aggregate amount due each month for the mortgage payment, alimony, and child support.[19]  As the mortgage payment, alimony, and child support were paid each month, Debtor was entitled to credit the amount of those payments toward the balance remaining on the Judgment.[20] The interest rate on the Judgment at the time of the Decree was 8%.[21]

**B.  Indiana Bankruptcy in 2004.[22]**

In 2004, Debtor filed a Chapter 7 bankruptcy case in the Northern District of Indiana, Case No. 04-13953-reg ("Indiana Bankruptcy").[23]  Debtor appeared in that case *pro se*.[24]  In the Indiana Bankruptcy, Debtor listed two priority debts owed to Moore: one in the amount of $4,799.00 for monthly support/alimony and another in the amount of $675,000.00 for "Judgement in Divorce Settlement."[25]

Debtor entered into a reaffirmation agreement with Moore, agreeing to reaffirm a debt in the amount of $675,000 with interest at 8% per annum.[26]  Since Debtor was *pro se*, a hearing on

---

[16] *Id*. at ¶9.
[17] *Id*. at ¶9.
[18] *Id*. at ¶10.
[19] *Id*. at ¶10.
[20] *Id*. at ¶10.
[21] *Id*. at ¶10.
[22] Central to Debtor and Moore's contentions is the record in the underlying Indiana Bankruptcy and the scope of any discharge Debtor received in that case.  To assist the Court, it has taken judicial notice pursuant to Fed. R. Evid. 201(b)(2), of the records of the Indiana Bankruptcy case, specifically ECF Nos. 1-28.  These items will be cited as "Ind. ECF No."
[23] Ind. ECF No. 1.
[24] *Id*.
[25] *Id*.
[26] Ind. ECF No. 13.

approval of Debtor's reaffirmation agreement with Moore was held January 24, 2005.[27]  At that hearing, the Indiana Bankruptcy Judge expressed skepticism regarding whether the debt should be reaffirmed, and denied approval of the reaffirmation agreement.[28]  Moore did not file a dischargeability complaint in the Indiana Bankruptcy.  Debtor received a discharge under § 727 on December 13, 2004.[29]

### C.  Montana Bankruptcy 2012.[30]

On September 4, 2012, Debtor, again acting *pro se*, commenced a voluntary Chapter 7 bankruptcy in this District ("Montana Bankruptcy").[31]  Debtor did not list his prior Indiana Bankruptcy in his Montana Bankruptcy petition.[32] Debtor listed Moore on Schedule E with two priority claims totaling $675,857.00.[33]  At the time Debtor filed his Montana Bankruptcy, he was employed and his gross wages were $4,670 per month.[34]  Debtor's monthly take home pay was $3,312.[35]  Debtor's monthly expenses were $4,037, which included $867 for alimony, $398 for a car payment and $2,166 for rent and mortgage payments.[36]  The mortgage payments corresponded to a home in Indiana, which was presumably the marital residence awarded to Moore.[37]

---

[27] Ind. ECF No. 16.

[28] ECF No. 36-3 (Transcript from reaffirmation hearing held January 24, 2005).

[29] Ind. ECF No. 14.

[30] Pursuant to Fed. R. Evid. 201(b)(2) the Court has taken judicial notice of Debtor's main case, Case No. 12-61434.  References to the docket in the main case are, "Mont. ECF No."

[31] Mont. ECF No. 1.

[32] Debtor was not obligated to disclose his Indiana Bankruptcy because it occurred more than 8 years before the Montana filing.

[33] Mont. ECF No. 1.

[34] *Id*.

[35] *Id*.

[36] *Id*.

[37] *Id*.

### D.  This Adversary Proceeding.

Moore filed her complaint commencing this Adversary Proceeding on May 31, 2013 ("Complaint").[38]  In the Complaint, Moore sought to except from Debtor's discharge her Judgment in the amount of $675,000 plus accrued interest thereon, and an arrearage on alimony in the amount of $98,904.00, and mortgage arrears in the amount of $95,179.52.[39]  The cover sheet filed with the complaint cites §§ 523(a)(2), (a)(5), (a)(6), and (a)(15) as grounds for nondischargeability.[40]  Prior to trial, Moore filed a motion seeking summary judgment or judgment on the pleadings.[41]  Moore alleged that the obligations arising from the Decree were not dischargeable.  In his response, Debtor agreed.[42]  The Court granted Moore's request for summary judgment.[43]

The matter was not contested.  Notably, Moore did not contend that alimony and the Judgment were the same.  Instead, she identified $98,904.00 as alimony, and $95,179.52 as mortgage debt awarded under the Decree.  Further, she separately set forth the Judgment amount, alleging that $675,000, along with accrued interest should be excepted from discharge.  Neither her complaint, nor her summary judgment motion contended that alimony and the Judgment were the same. Based on the record presented to it, this Court concluded:

> Based on the pleadings any unpaid debts, in any amount, owed by Defendant to the Plaintiff in connection with the Decree of Dissolution of Marriage are excepted from Defendant's discharge under § 523(a)(5) and/or (a)(15) . . . . . . Similarly, the Court deems it redundant and a waste of scarce judicial resources and the parties' time and expense to conduct a trial to determine dischargeability of the same debts under § 523(a)(2) or (a)(6), when the debts already are nondischargeable under § 523(a)(5) and/or

---

[38] ECF No. 1
[39] *Id.*
[40] *Id.*
[41] ECF No. 20.
[42] ECF No. 22.
[43] ECF No. 24.

(a)(15), especially when the Defendant admits such debts are nondischargeable.[44]
Following this Court's Discharge Decision, Debtor received a discharge in his Montana
Bankruptcy under § 727 on February 6, 2014.[45]  When this Court issued its Discharge Decision
in January 2014, nothing in the record suggested any Decree-related debts may have been
discharged in Debtor's prior bankruptcy in 2004. Indeed, the Indiana Bankruptcy was not even
listed on the Montana Bankruptcy petition.

**E. The Motion for relief from the Discharge Decision.**

More than 3 years after entry of this Court's Discharge Decision, Debtor filed the Motion
requesting relief pursuant to Rule 9024, and Civil Rule 60.[46]  For the first time, this Court was
advised of Debtor's Indiana Bankruptcy and his prior discharge, a discharge that included debts
arising under § 523(a)(2), (a)(6) and (a)(15), because Moore failed to file a complaint to
determine dischargeability of debt in the Indiana Bankruptcy, or otherwise object to Debtor's
discharge.[47]

Moore testified at the April 10, 2018 hearing that she was unable to work at the time of
the divorce, and the Judgment and other support obligations were each intended to provide
spousal support.[48]  According to Moore, the payments Moore receives from Debtor are her only
source of income.[49]  She also testified that the intent of the Decree was to establish her right to
receive payments in perpetuity.[50]  Debtor testified that at some point he maintained two jobs, one

---

[44] ECF No. 24.
[45] Mont. ECF No. 40.
[46] ECF No. 36.
[47] *Id*.
[48] ECF No. 63.
[49] *Id*.
[50] *Id.*

for the purpose of paying his living expenses, and a second solely so he could turn the net income after taxes over to Moore to satisfy the obligations under the Decree.[51]

Following the April 2018 hearing on the Motion, this Court entered an Order holding the Motion in abeyance, so that the parties:

> . . . . . can return to the Hancock County Circuit Court of the State of Indiana to calculate the exact dollar amount of the payments that Debtor made to Moore between the date of the Decree of Dissolution and Debtor's August 31, 2004 petition date and to allocate those payments between the mortgage payments, child support, alimony and the marital tort debt, and to calculate the amounts still owing for each of the foregoing categories of debt as of August 31, 2004. The Hancock County Circuit Court of the State of Indiana is also invited to provide further clarification on the nature of the marital tort debt, and whether it was intended to be in the nature of alimony or support for Moore.[52]

### F.  State Court Proceedings.

The State Trial Court conducted a two-day trial to determine the nature of the marital tort and Judgment.  Moore argued that re-litigation of whether a marital tort occurred was barred by res judicata.  Her objection was overruled.  Moore appealed the decision and the State Appellate Court reversed and remanded with instructions, "for the trial court to issue an order classifying the marital tort and judgment as an intentional battery which resulted in a willful and malicious injury . . ."[53]

The State Appellate Court explicitly noted this Court's request for clarification of whether the Judgment was intended to be "akin to alimony or support."  In its decision, the State Appellate Court referred to both §§ 523(a)(5) and (6), before clarifying that the Judgment was not alimony, or any other domestic support obligation.  According to the Indiana Court of Appeals, "the judgment [for Marital Tort] compensates Wife for a willful or malicious injury.

---

[51] *Id.*
[52] ECF No. 64.
[53] ECF No. 80.

8

As such the judgment was not dischargeable in Husband's subsequent bankruptcy proceedings."[54]

On remand the State Trial Court allocated and applied Debtor's payments to the various obligations.  Debtor paid Moore $108,513 between the date of the Decree (September 23, 2002), and the date of Debtor's Indiana Bankruptcy, (August 31, 2004).[55]  Debtor paid Moore an additional $304,189.77, between his Indiana Bankruptcy petition date and his Montana Bankruptcy petition date, September 4, 2012.[56]  In total, Debtor paid Moore $412,702.77 from September 2002 to September 2012.[57]

The State Trial Court allocated the payments in order of priority to child support, mortgage payments, and alimony.[58]  The mortgage payment obligation ended in August 2014 when the mortgage was released, 7 months after this Court's Discharge Decision.[59]  The parties stipulated that as of Debtor's September 4, 2012, petition date, the balance owing to Moore under the Decree was $574,000.[60]  The parties' children are grown, and the mortgage on the marital residence has been satisfied.[61]

## ISSUE

Whether Debtor is entitled to relief from this Court's 2014 Discharge Decision under

---

[54] ECF No. 80-1.
[55] ECF No. 87.
[56] *Id*.
[57] *Id*.
[58] *Id*.
[59] *Id*.
[60] The parties attributed this balance to "alimony/maintenance."  However, this characterization is impossible to reconcile with the conclusion reached by the State Appellate Court.
[61] *Id*.

subsections 4-6 of Civil Rule 60(b)(6), made applicable in this Adversary Proceeding by Rule 9024, because the Judgment debt excepted from discharge in 2014 was previously discharged in 2004.

**JURISDICTION**

This Court has jurisdiction over this core proceeding under 28 U.S.C. §§ 157(b)(1) and (2)(I).

**APPLICABLE LAW AND DISCUSSION**

Civil Rule 60(b), incorporated into bankruptcy proceedings by Rule 9024, provides in relevant part:

> . . . On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.[62]

The Motion argues that this Court's Discharge Decision is void, or alternatively that any remaining debt owed by Debtor to Moore was discharged in 2004, so the Discharge Decision and judgment should be vacated.

Civil Rule 60(b) enables a court to grant relief from a judgment in circumstances in which the need for truth outweighs the value of finality in litigation.  12 *Moore's Federal Practice* § 60.02 (3d ed. 2020).  Motions for relief under subsection (b)(4), (5), and (6) must be made within "a reasonable time." Fed. R. Civ. P. 60(c)(1).  "What constitutes a reasonable time depends on the facts of each case." *In re Pacific Far East Lines, Inc.,* 889 F.2d 242, 249 (9th

---

[62] Debtor does not seek relief under subsections 1, 2, or 3 of Civil Rule 60(b).

Cir.1989) (internal quotation marks omitted).  When considering whether a Civil Rule 60(b) motion was filed within a reasonable time, a court may consider any prejudice suffered by the non-moving party attributable to the delay, and whether the moving party had good reason for not acting sooner.  *Id.*

Moore has not been prejudiced by the delay.  Although more than 3 years passed between this Court's Discharge Decision and the Motion, Moore has not established that she suffered any prejudice.  To the contrary, after entry of the Discharge Decision, the mortgage was released in August 2014, and the child support obligation satisfied in August 2016, a year before the Motion was filed.  As a result, the only remaining obligations under the Decree are alimony and the Judgment.  Debtor's Motion hinges on whether the Judgment was discharged in 2004, and if so, reconsideration of this Court's Discharge Decision excepting it from discharge in 2014.

Debtor's failure to raise the issue of his 2004 discharge sooner than 2017, more than 3 years after this Court entered its Discharge Decision in 2014, suggests a lack of diligence on Debtor's part.  The singular explanation for Debtor's delay was his incorrect understanding of the scope of the discharge he received in 2004, and failure to raise it as a defense in 2014.[63] Ordinarily, this lengthy delay would not constitute good reason for granting relief under Civil Rule 60(b).  However, under the circumstances in this case, this Court would be remiss if it did not revisit its Discharge Decision in light of the new revelation that the Judgment it excepted from Debtor's discharge in 2014 may have been discharged 10 years earlier. Debtor's Motion is

---

[63] Sometime after Debtor's Montana Bankruptcy was closed in 2014 and after not receiving a payment from Debtor in over a year, Moore returned to the State Trial Court to enforce the Decree.  It was during Moore's effort to enforce the Decree that Debtor retained counsel. Debtor's counsel promptly moved to reopen the Montana Bankruptcy to seek relief under Civil Rule 60(b).

timely.

### A. Civil Rule 60(b)(4).

"[A] void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010). A final judgment is "void" for purposes of Rule 60(b)(4) "only in the rare instance where [it] is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Id*. at 271. "[A] judgment is not void ... simply because it is or may have been erroneous." *Id*. at 270. Rather, "a final judgment is 'void' for purposes of Rule 60(b)(4) only if the court that considered it lacked jurisdiction, either as to the subject matter of the dispute or over the parties to be bound, or acted in a manner inconsistent with due process of law." *U.S. v. Berke*, 170 F.3d 882, 883 (9th Cir. 1999).

At the time this Court entered the Discharge Decision, this Court had jurisdiction over the parties and subject matter. First, this Court had jurisdiction to determine the dischargeability of a particular debt pursuant to 28 U.S.C. § 157(a). For purposes of Moore's actions under §§ 523(a)(2) and (a)(6) this Court's jurisdiction was exclusive. However, under §§ 523(a)(5) and (a)(15), this Court's jurisdiction was concurrent with the State Trial Court. Neither Moore nor Debtor have alleged this Court lacked jurisdiction over themselves or the subject matter, at the time the Discharge Decision was entered.

Additionally, nothing suggests either party lacked notice or was deprived of the opportunity to be heard. Indeed, both parties actively participated, and took affirmative positions that the Court relied on. The record shows that Moore and Debtor have a long history of representing themselves and their active participation in this case demonstrates they received

12

notice and were afforded an opportunity to be heard.  As a result, this Court cannot conclude this

is the rare instance where its judgment is void due to a jurisdictional error or a violation of due

process as contemplated by Civil Rule 60(b)(4).

However, if the Judgment debt excepted from Debtor's discharge in the 2014 Discharge

Decision was previously discharged in Debtor's Indiana Bankruptcy in 2004, this Court's later

Discharge Decision may suffer from a fundamental infirmity that makes it erroneous, but that

infirmity is not premised on either a "total want of jurisdiction" or due process violation.[64]

Consideration of whether the Discharge Decision is erroneous is better suited to Civil Rule

60(b)(6), discussed below.

### B.  Civil Rule 60(b)(5).

Civil Rule 60(b)(5) allows a party to obtain relief from a judgment or order if it has been

satisfied, released or discharged.  Ordinarily, in cases discussing relief under Civil Rule 60(b)(5)

based on satisfaction or discharge, a money judgment has been entered against a defendant who

later returns to the court that issued the judgment and argues that the judgment was satisfied or

discharged, based on events that occurred after entry of the judgment.  *See Redfield v. Insurance

Co. of N. Am.*, 940 F.2d 542, 549 (9th Cir. 1991).  Neither Debtor's argument nor the facts in this

case lend themselves to relief under Civil Rule 60(b)(5).

### C.  Civil Rule 60(b)(6).

Subsection (6) of Civil Rule 60(b) is a "catch-all provision" that provides for relief from

---

[64] The Supreme Court rejected an effort to expand the limited circumstances under which a judgment is void for purposes of Civil Rule 60(b)(4) in  *Espinosa,* 559 U.S. at  271.  Debtor's argument in this case is like the argument that was rejected in *Espinosa*, and while Debtor may be correct that this Court's Discharge Decision was erroneous, that is not synonymous with being void for purposes of Civil Rule 60(b)(4).

a final order for "any justifiable reason."  "This provision, which provides for relief from a judgment based on 'any other reason,' is a 'grand reservoir of equitable power to do justice in a particular case.'"  12 *Moore's Federal Practice* § 60.48 (3d ed. 2020).  Based on public policy favoring the finality of judgments and termination of litigation, a party seeking relief under Civil Rule 60(b)(6) must demonstrate the existence of "extraordinary circumstances."  *Gonzales v. Crosby*, 545 U.S. 524, 535 (2005).

When a party freely and deliberately makes decisions regarding the conduct of litigation, that party cannot obtain relief under Civil Rule 60(b)(6) upon discovering the choices were ill-conceived. *Ackermann v. United States*, 340 U.S. 193, 198 (1950).  In this Adversary Proceeding, neither Moore nor Debtor disclosed the prior discharge because they both failed to appreciate its scope and importance, and the nature of the specific debts in the Decree.  Moore and Debtor made a series of deliberate litigation decisions that led to entry of this Court's Discharge Decision.  Moore alleged and Debtor agreed that the Judgment debt was not dischargeable.  Ordinarily, these decisions would reflect the sort of deliberate conduct that does not entitle a party to relief under Civil Rule 60(b)(6).  However, in this case, the parties' litigation choices may have so fundamentally misled this Court that its Discharge Decision may reflect an error of law.

To accomplish justice, Civil Rule 60(b)(6) is to be liberally applied, and "errors of law are cognizable under Civil Rule 60(b)." *Zurich Am. Ins. Co. v. Int'l Fibercom, Inc.* (*In re Int'l Fibercom, Inc.*), 503 F.3d 933, 939, 945 (9th Cir. 2007).  In *Int'l Fibercom*, the Ninth Circuit held "that the bankruptcy court properly relied upon Federal Rule of Civil Procedure 60(b)(6) in limiting its prior order to ensure that the order complied with the Bankruptcy Code."  *Id*. at 396.  In that case, "[t]he bankruptcy court correctly found that extraordinary circumstances justified

14

reconsidering the assumption order because the order erroneously granted assumption of a non-assumable contract, thereby violating § 365 of the Bankruptcy Code." *Id*. at 941.

To adequately consider whether relief under Civil Rule 60(b)(6) is warranted, an analysis of whether the Judgment was discharged in 2004 is necessary.  If the Judgment was excepted from discharge in 2004, there is no basis to seek relief from the Discharge Decision excepting it from discharge in 2014 because the outcomes are consistent, and no cognizable error of law occurred.  However, if the Judgment was discharged in 2004, this Court erroneously excepted it from discharge in 2014 and relief under Civil Rule 60(b)(6) is appropriate.

**1.  Debtor's discharge in 2004.**

A discharge in a chapter 7 case releases a debtor from personal liability for pre-petition bankruptcy debts. *In re Ybarra*, 424 F.3d 1018, 1022 (9th Cir. 2005).  The discharge under § 727 includes all pre-petition debts except for nineteen categories of debts set forth in the Code.  *See* §§ 727(b), 523(a).  Debts owed to a former spouse pursuant to a divorce decree, separation agreement or order of a court for child support, alimony, maintenance or support are one category of debts excepted from discharge under § 523(a)(5). [65]  Another category of excepted debts includes obligations found in a divorce decree, separation agreement or order of a court that are not alimony, maintenance, support, or child support, *i.e.,*, non-support obligations.  § 523(a)(15).

Under the 2004 version of § 523(c)(1), a chapter 7 debtor:

. . . .  shall be discharged from a debt of a kind specified in paragraph (2), (4), (6), or (15)

---

[65] In 2005, Congress codified the term "domestic support obligation" in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109–8, 119 Stat. 23.  This definition includes in part, alimony, maintenance or support.  Now, § 523(a)(5), simply excepts from discharge any debt for a "domestic support obligation."

of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), (6), or (15), as the case may be, of subsection (a) of this section. [66]

Unlike a support obligation under § 523(a)(5), that is automatically excepted from discharge, debts under § 523(a)(15) were not automatically excepted from discharge in a chapter 7 case in 2004. Instead, a debt arising under § 523(a)(15) would only be excepted from discharge if the creditor filed a complaint to determine the dischargeability of the debt no later than 60 days after the first date set for the meeting of creditors. Rule 4007 (2004).

Debtor's Motion is premised entirely on his contention that the Judgment is a debt under § 523(a)(15), and in 2004, Moore failed to file a complaint to determine the dischargeability of the Judgment debt in the Decree as required by § 523(c)(1) and Rule 4007. As a result, at the time of his Montana Bankruptcy, 8 years later, his personal liability for the Judgment had already been discharged. Debtor contends that including the Judgment debt on his schedules was a mistake and, more importantly, since his personal liability for the Judgment was already discharged 8 years earlier, excepting it from discharge in this case was erroneous and merits relief. Moore counters that the Judgment and alimony are, in essence, the same debt. If the Judgment is a debt for support under § 523(a)(5), it was automatically excepted from discharge

---

[66] As COLLIER'S explains:

In the 2005 amendments, Congress also deleted the reference to section 523(a)(15) from section 523(c)(1). Therefore, debts falling under section 523(a)(15) are no longer included in the category of debts that are discharged automatically if a party does not obtain a determination of nondischargeability from the bankruptcy court.

4 COLLIER ON BANKRUPTCY ¶ 523.23 (16th ed. 2020). However, because Debtor obtained a discharge in his Indiana Bankruptcy in 2004, the Court must apply the pre-BAPCA version of § 523(c)(1).

in 2004, its exception from discharge in 2014 was correct, and the Motion should be denied.

When former spouses dispute whether an obligation is actually in the nature of support under § 523(a)(5), federal law is determinative.  *In re Reines*, 142 F.3d 970, 972 (7th Cir. 1998).[67]  In determining whether a debtor's obligation is in the nature of support, the intent of the parties at the time the settlement agreement is executed is dispositive.  *Sillins v. Sillins (In re Sillins)*, 264 B.R. 894, 896 (Bankr. N.D.Ill. 2001). If the intent of the court and parties is not clear, or the parties dispute their intent, bankruptcy courts consider multiple factors in an effort to divine the intent of the parties and properly categorize debts found in divorce decrees and separation agreements for purposes of dischargeability.  *Id*.

The Seventh Circuit has identified various factors to assist the bankruptcy court, including: "the language and substance of the agreement (or decree), the financial circumstances of the parties at the time the obligation was imposed, and the function served by the obligation." *In re Bartlett*, 2014 WL 7252049, at *1 (Bankr. N. D. Ind. 2014).  As one Court observed, "this exercise usually results in a mixed bag with factors pointing both directions."  *In re Reines*, 142 F.3d 970, 973 (7th Cir. 1998).

The Decree provided for spousal support separate and distinct from the Judgment. The Decree specifically and explicitly required Debtor to pay Moore alimony in paragraph 9 and child support in paragraph 13.  Moreover, in paragraph 8 of the Decree, Debtor was also ordered to pay the mortgage payments on the marital residence that was awarded Moore.  The Judgment did not terminate on Moore's death or remarriage.  Generally, an obligation in the nature of support terminates on the remarriage or death of a former spouse.  Debtor's financial

---

[67] On this point, the Court looks to Seventh Circuit law in effect in 2004 because the Indiana Bankruptcy Court is in that circuit.

circumstances were at best, precarious. Debtor sometimes worked two jobs to make his payments to Moore.

Finally, the nature and duration of the Judgment unambiguously show it was not in the nature of alimony, maintenance, or support a support. Debtor and Moore have been divorced for over 18 years. Between September 23, 2002, and September 4, 2012, Debtor paid Moore $412,702.77. The parties' children are grown and the mortgage on the marital residence has been satisfied. Based on the record available, Moore's argument that the Judgment was a debt for support under § 523(a)(5) is not persuasive. The State Appellate Court also implicitly rejected Moore's argument that the Judgment is a § 523(a)(5) debt.

This Court's jurisdiction to determine the dischargeability of a debt under § 523(a)(5) is concurrent with state courts. *Aldrich v. Imbrogno (In re Aldrich)*, 34 B. R. 776, 780 (9th Cir. BAP 1983). A bankruptcy court may abstain and defer to a state court based on comity. *See Siragusa v. Siragusa (In re Siragusa)*, 27 F.3d 406, 408 (9th Cir. 1994) (explaining that although federal law controls the determination of whether a debt stemming from divorce is in the nature of alimony or a property settlement, state and federal courts have concurrent jurisdiction to decide the issue).[68]

The State Appellate Court considered Moore's contention that the Judgment was a § 523(a)(5) debt. It alternatively considered § 523 (a)(6). After considering both subsections of § 523, it concluded: "the judgment [for Marital Tort] compensates [w]ife for a willful or malicious injury. As such the judgment was not dischargeable in [h]usband's subsequent bankruptcy

---

[68]*See also*, *In re MacDonald*, 755 F.2d 715, 717 (9th Cir. 1985) recognizing that bankruptcy courts generally, "avoid incursions into family law matters out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters."

proceedings." By concluding that the Judgment was a debt for willful and malicious injury, the State Appellate Court implicitly rejected any alternative argument that the Judgment was for support. The State Court had concurrent jurisdiction on this issue and its rejection of Moore's position is entitled to deference by this Court. Based on its own analysis and the reasoning of the State Appellate Court, this Court determines that the Judgment was not a debt for alimony or support under § 523(a)(5) in 2004 when Debtor received his discharge in the Indiana case.

Unlike § 523(a)(5), bankruptcy courts have exclusive jurisdiction to determine the dischargeability of debts under § 523(a)(2), (4) and (6). *In re Aldrich*, 34 B. R. at 781 (9th Cir. BAP 1983) (explaining that claims for nondischargeable debts under § 523(a)(2), (4) and (6) may not be pursued in the state court as a result of the exclusive jurisdiction granted to bankruptcy courts by the Code). As a result of this Court's exclusive jurisdiction to determine dischargeability of debts under § 523(a)(2), (4) and (6), it cannot defer to the State Appellate Court's conclusion that since the Judgment corresponded to a willful and malicious injury "the judgment was not dischargeable in [h]usband's subsequent bankruptcy proceedings." More importantly, this conclusion is wrong because it failed to consider the necessity of timely filing a complaint. *See* § 523(c)(1), Rule 4007 (2004).

Ultimately, a determination of whether the Judgement was a debt under § 523(a)(6), as the State Appellate Court concluded, or under (a)(15), as urged by Debtor, is unnecessary here. Under either outcome, the Judgment debt was discharged because Moore failed to file a timely complaint to determine its dischargeability. In 2004, § 523(c)(1) stated, "the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), (6), or (15) of subsection (a) of this section" unless a creditor filed a dischargeability complaint. Therefore, to prevent a debt under paragraph (2), (4), (6), or (15) of subsection (a) from being discharged in Debtor's 2004

bankruptcy, Moore had to file a complaint no later than 60 days after the first date set for the meeting of creditors. She failed to do so. As a result, the Judgment debt was discharged in 2004 irrespective of whether it is categorized as an (a)(6) or (a)(15) debt.

### 2. Debtor's Discharge in 2014.

Once a debtor receives a discharge, a judgment that is a determination of personal liability on a discharged debt is void. § 524(a)(1). Additionally, the discharge operates as an injunction against further action to determine a debtor's personal liability for the discharged debt. § 524(a)(2). "Void" means void *ab initio* not merely voidable in this statutory context. *In re Gurrola*, 328 B.R. 158, 175 (9th Cir. BAP 2005). To protect the sanctity of the debtor's discharge the provisions are "self-executing." *Id.* The discharge a debtor receives in bankruptcy constitutes an absolute and nonwaivable defense. *Id.* at 171. Since discharge is a nonwaivable defense, Debtor is neither estopped by his prior conduct nor otherwise prohibited from seeking reconsideration of this Court's Discharge Decision.

Debtor's 2004 discharge in the Indiana Bankruptcy released Debtor from any personal liability for the Judgment. According to the Decree, Debtor was obliged to pay alimony for so long as he was obliged to pay the Judgment ("Said payment shall continue for so long as there remains an outstanding balance on the judgment referenced below, . . .").[69] Debtor's discharge in 2004 effectively eliminated any outstanding balance on the Judgment because Debtor was no longer personally liable for that debt. Debtor's elimination of his personal liability for the Judgment had the effect of eliminating the alimony obligation in the Decree because the language in the Decree conditioned alimony on the existence of a balance on the Judgment. On

---

[69] ECF No. 36-1 at ¶9.

the petition date of the Montana Bankruptcy, Debtor's obligations to Moore under the Decree were limited to child support and mortgage payments.

This Court's Discharge Decision in 2014 excepted from discharge the Judgment debt that was discharged in 2004. After entry of Debtor's discharge in 2004, Moore was enjoined against further action to determine Debtor's personal liability for the Judgment debt. This Court's determination in its Discharge Decision that Debtor was personally liable for the Judgment debt is void pursuant to § 524(a)(1). This Court's exception of the Judgment from Debtor's discharge in his Montana Bankruptcy was in error.[70]

### CONCLUSION

It is well-settled that a central goal of the Bankruptcy Code is to provide a fresh start to the honest but unfortunate debtor. *See Grogan v. Garner*, 498 U.S. 279 (1991). After carefully considering the record, facts and applicable law, this Court concludes that the Judgment was discharged in Debtor's Indiana Bankruptcy in 2004. If Moore wanted to except the Judgment from Debtor's discharge, she was required to file a dischargeability complaint in the Indiana Bankruptcy in 2004, not Debtor's 2012 Montana Bankruptcy. For these reasons, the Court finds that Debtor's Motion under Civil Rule 60(b)(6) should be granted.

The Court determines that Debtor has fully paid all mortgage and child support obligations under the Decree. Any remaining debt for the Judgment, Debtor may have owed to Moore was discharged in the Indiana Bankruptcy in 2004. Further, per the terms of the Decree, the obligation to pay alimony was conditioned on Debtor's obligation to pay the Judgment. As a

---

[70] The implications of the Court's decision and potential for new allegations and litigation between the parties for alleged violations of the 2004 discharge are not lost on this Court. However, given the child support and mortgage obligations were to be paid first, and neither was satisfied until after the Montana bankruptcy, this risk appears low.

result, there was no prepetition debt for alimony at the time of the Montana Bankruptcy under the Decree.  Accordingly, the Court will enter a separate Order granting Debtor's Motion at ECF No. 36 and vacate its prior Order and Judgment at ECF No. 25.

Dated December 4, 2020.

BY THE COURT:

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana